EXHIBIT A

Case 1:10-cv-01139-JDB   Document 1-1   Filed 07/06/10   Page 1 of 13

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

OWEN F. SILVIOUS
16497077 FCI-2 Butner
PO Box 1500
Butner, NC 27509,

                            Plaintiff,

v.                                Civil Action No 0004242-10

CHIQUITA BRANDS INTERNATIONAL INC.,
250 East Fifth Street
Cincinnati, OH 45202

and

CHIQUITA FRESH NORTH AMERICA LLC
250 East Fifth Street
Cincinnati, OH 45202

and



RECEIVED
Civil Clerk's Office
JUN 0 3 2010
Superior Court
District of Columbia
Washington, D.C.

DOLE FOOD COMPANY, INC.
One Dole Drive
Westlake Village, CA 91362

and

DOLE FRESH FRUIT COMPANY
One Dole Drive
Westlake Village, CA 91362

and

FRESH DEL MONTE PRODUCE INC.
241 Sevilla Avenue
Coral Galbes, FL 33134

and

DEL MONTE FRESH PRODUCE COMPANY
241 Sevilla Avenue
Coral Gables, FL 33134,

                            Defendants.

COMPLAINT

1. This is an action under the District of Columbia Consumer Protection Procedures Act, DC Code 28-3901 et seq., DC Code 28-3905(k)(1), because the above defendants and others violated a "trade practice law" of the District of Columbia (hereinafter referred to as DC or state), namely defendants violated the District of Columbia Antitrust Act (Restraints of Trade Act), DC Code 28-4501 et seq., DC Code 28-4502 and DC Code 28-4503, as more fully described herein. Plaintiff brings this action on behalf of ████ the "general public" for the maximum statutory fees and other relief as stated herein.

2. This Court has jurisdiction pursuant to DC Code 11-921 and DC Code 28-3905(k)(1).

3. Plaintiff was and is a "consumer" as broadly defined in DC Code 28-3901(a)(2).

4. Defendants were and are "merchants" as that term is broadly defined in DC Code 28-3901(a)(3).

5. Plaintiff is a legal resident of the State of Virginia who visited the District of Columbia more than fifty times during the period October 19, 2000 through January 31, 2005, part of the period stated in the Antitrust civil action that was filed in the United States District Court, Southern District of Florida, under Docket No. 05-CV-61335 which was settled by the direct and indirect purchasers of defendants product(bananas).

6. Defendants product (bananas) were and is sold indirectly to the general public throughout the United States and the District of Columbia. The term "general public" as used in this action mean individuals who resided in the District of Columbia, individuals that worked in the District of Columbia and individuals who visited the District of Columbia betweeen the period October 19, 2000 and June 26, 2007.

7. Chiquita Brands International Inc., is a New Jersey corporation with its mailing address at 250 East Fifth Street, Cincinnati, OH 45202.

8. Chiquita Fresh North America LLC, is a Delaware limited liability corporation with its mailing address at 250 East Fifth Street, Cincinnati, OH 45202.

9. Dole Foods Company, Inc., is a Delaware corporation with its mailing address at One Dole Drive, Westlake Village, CA 91362.

10. Dole Fresh Fruit Company is a Nevada corporation with its mailing address at One Dole Drive, Westlake Village, CA 91362.

11. Fresh Del Monte Produce Inc., is incorporated in the Cayman Islands, with its mailing address at 241 Sevilla Avenue, Coral Gables, FL 33134.

12. Del Monte Fresh Produce Company is a Delaware corporation with its mailing address at 241 Sevilla Avenue, Coral Gables, FL 33134.

13. Defendants products (bananas) were and are sold throughout the United States, including the District of Columbia.

14. According to the UN's Food and Agriculture Organization (FAO), bananas are the world's most popular fruit. Worldwide banana exports average more than 15 million metric tons a year.

15. The United States imports approximately 30 percent of the world's banana supply. The size of the banana market in the United States is more than $2 billion a pear.

16. The US banana market is dominated by the named defendants. It is a highly concentrated market among only a few companies that dominate the industry, including, production, packaging, shipping and import. Bananas are packed in 40-pound boxes. Togather, Chiquita, Dole and Del Monte deliver more than two-thirds of the world's bananas, valued at more than $4.5 billion a year.

17. Nearly 90 percent of the North America banana market is dominated by defendants Chiquita, Dole and Del Monte. Togather Chiquita and Dole control 50 percent of the world trade in bananas, with defendant Del Monte controls 15 percent and an unnamed coconspirator Grupo Noboa, SA, a privately Ecuadorian corporation has 11 percent of the market.

18. Plaintiff alleges that the named defendants and unnamed coconspirators conspired to monopolize, control, restrain trade and combined to fix the price of bananas sold in the United States, including the District of Columbia during the period stated above.

19. From October 19, 2000 through June 26, 2007, because of the conspiracy, the price of bananas increased from approximately $5.40 per box to more than $11.00 per box. The price increase occurred absent economic conditions that would be consistent with legitimate, non-conspiratorial increase.

20. Defendants met in the city of San Jose, Costa Rico in 2001 to discuss the conspiracy. At this mceeting, participants, including defendants named herein raised concerns about the negative banana pricing trends and agreed to study banana market trends over the past few years to examine reasons behind the long term price decline while the gap between priced received by grower's and paid by consumers had continued to widen.

21. Following the meeting in June, banana price per 40 pound box increased 40 percent to $11.38. This price increase reversed a prior decline and occurred in the absence of economic conditions that would warrant such a price increase absent defendants conspiracy to conopolize, control, restrain markets and combine to fix the price of bananas sold in the United States, including the District of Columbia.

22. In March 2004, defendants along with other banana producers throughout the world met in the Canary Islands, Spain in furtherance of the conspiracy.

23. Following that meeting, banana prices continued a sharpe increase that began in 2001, rising to more than $12.00 per box. This price increase also occurred absent economic conditions that would be consistent with a legitimate non-conspiratorial increase.

24. Sometime around June 2005, Chiquita alerted the European Union (EC) that its employees had shared pricing and volume information with its competitors over many years and might have violated the antitrust laws and engaged in an illegal banana cartel. Defendant Chiquita further notified the United States authorities to the illegal activity.

25. The European Commisssion granted Chiquita immunity from criminal fines, conditional on Chiquita's continued coorperation. Following Chiquita's confession, the EC raided defendant's Dole and Del Monte's offices as part of its price fixing investigation.

26. On June 3, 2005, Chiquita released a statement regarding the EC's investigation, explaining that "certain of it's employees had shared pricing and volume information over many years with it's competutor's."

27. Chiquita further reported that certain employees in an unnamed Central American country had "shared information with competitor's regarding the volume of bananas shipped to North America, including the United States. Chiquita revealed that it was cooperating with authorities in the EC, the US and Canada in the price fixing conspiracy.

28.     Also on June 3, 2005, defendant Dole confirmed that antitrust authities had searched its offices.

29.     Also on June 3, 2005, defendant Del Monte announced that antitrust authorities had raided its offices in Hamburg, Germany on June 2, 2005, in connection with the banana cartel investigation.

30.     Plaintiff alleges the conduct reported by defendant Chiquita to the United States authorities affected commerce and purchasers worldwide, including the United States and the District of Columbia, paid a higher price for bananas than they would normally have paid absent economic conditions that would be consistent with a legitimate non-conspiratorial increase.

31.     Plaintiff and members of the general public as defined herein had no knowledge of defendant's unlawful, self-concealing conspiracy and could not have discovered it at an earlier date through due diligence because the illegal practices and technique's of secrecy defendant's employed to avoid detection of and to conceal their conspiracy.

32.     Plaintiff and members of the general public did not discover and could not have discovered through reasonable diligence the existence of defendants conspiracy until a legal notice appeared in the USA Today Newspaper on August 14, 2007 pertaining to an antitrust action that had been filed in the United States District Court, Southern District of Florida, under Docket No. 05-cv-61335, although some attorneys kew about alleged price fixing who filed the antitrust action.

33.     As part of this complaint alleges the allegations stated in paragraphs 20 thru 45 of an antitrust action complaint filed ~~on~~ in the United States District Court, Southern District of Florida, Docket No. 05-cv-61335 (Exhibits A thru E).

34.     Plaintiff alleges that defendant's violated a "trade practice law" of the District of Columbia, namely the DC Antitrust Act, DC Code 28-4501 et seq., DC Code 28-4502 and DC Code 28-4503 because defendant's conspired to monopolize, combine, restrain trade, control and fix the price of bananas during the period October 19, 2000 thru June 26, 2007. (The June 26, 2007 date was agreed to by defendant's in a Settlement Agreement entered into between certain named plaintiff's and defendant's Chiquita, Dole and Del Monte in the antitrust action stated in paragraph 33 above). ~~The violation effected~~

35.     Plaintiff alleges that neither himself or any member of the general public are bound by the Settlement Agreement stated in paragraph 34, because defendant's did not strictly comply with the specific requirements of Title 28 US Code 1715.

36.     Plaintiff argues that under the District of Columbia Consumer Protection Procedures Act, DC Code 28-3901 et seq., neither plaintiff or any member of the general public are required to prove that he or they actually purchased defendants products (bananas), or that he or any member of the general public were actually misled, deceived or damaged by dfendant's violation of a "trade practice law" of the District of Columbia. It is the violation of the "trade practice law" that creates liability against the named defendant's. DC Code 28-3905(k)(1). Case law supports this argument. DC Code 28-3905(k)(1) allows statutory fees of $1,500.00 per violation of a "trade practice law" of the District of Columbia.  See GRAYSON v. AT & T, 980 A 2d 1137(DC Ct of Appeals 2009); BREAKMAN v. AOL, 545 F Supp. 2d 96 DC DC 2008).

37.     Plaintiff argues that defendant's violated a "trade practice law" of the District of Columbia (DC Code 28-4502 and DC Code 28-4503) more that ten thousand times during the period of October 19, 2000 and June 26, 2007, namely each time defendant's bananas were sold during the period stated above, that was a violation of the statute.

38.     Plaintiff alleges that through discovery and documents on file with the US Department of Justice and documents filed in the federal court action, plus documents in the hands of unnamed persons, plaintiff will prove the allegations stated herein.

39.     Plaintiff ask this court to award statutory fees of $500.00 per violation (10,000 violations) but not more than $5 million against the named defendant's, payable to plaintiff as a member of the general public and other members of the general public, who wiol be required to file a claim for the statutory fees, plus award attornet fees of not less than $500.00 per hour or one third of any judgment entered against each of the named defendant's, whichever is greater, and all costs additional fees and and  if plaintiff is required to obtain the services of a law firm to handle this civil action, including cost of any legal notice plaintiff may be required to publish in one or more publications of general circulation and all costs, fees and expenses of this action. Attorney fees, costs, additional fees and

expenses to be awarded seperatelt from any judgment entered in favor of the general public and plaintiff as a member of the general public as defined in paragraph 6.

40. Plaintiff ask this court to enter judgment against ███ the named defendant's in the amount of $5 million and no more.

41. This action is not brought AS A CLASS ACTION pursuant to Title 28 USC 1332(d) or Rule 23 of the Federal Rule of Civil Procedures or Rule 23 of the Superior Court Rule of Civil Procedures. It is being brought by plaintiff as a private attorney general on behalf of the general public as defined in paragraph 5. This action is specifically exempt from being a class action or mass action as that term is defined in 28 USC 1332(d)(11)(B)(ii)(III).

Owen F Silvious  
16497077 FCI-2 Butner  
PO Box 1500  
Butner, NC 27509  

Respectfully submitted,

*(signature)*  
Owen F Silvious, Plaintiff

7

AFFIDAVIT

STATE OF NORTH CAROLINA )
COUNTY OF VANCE         )

    I, Owen F. Silvious, being first duly sworn on Oath deposes and say that the complaint and facts stated therein and the attachments thereto are true and correct to the best of my knowledge and belief.

                                                                          Owen F Silvious

Subscribed and sworn to before me this \_14th\_ day of April, 2010.

My Commission expires \_09-29-2014\_.

                                                Elizabeth Haithcock
                                                Notary Public

[Notary Seal: ELIZABETH HAITHCOCK, NOTARY PUBLIC, VANCE COUNTY, NC]

From May of 2003 through September of 2004, prices of bananas produced by Defendants and imported into the United States spiked from approximately $5.40 per box to over $10 per box as shown in the chart below:

**United States Banana Prices**



## FACTUAL ALLEGATIONS

*The Banana Market and Banana Pricing*

20. According to the UN's Food and Agriculture Organization ("FAO"), bananas are the world's fourth most valuable food crop.

21. The worldwide banana market is highly concentrated among only a few companies that dominate the industry, including all aspects of the supply chain including, production, packaging, shipping and import. Defendants Dole, Chiquita, Del Monte, and Noboa dominate the world trade in bananas. Together, these companies deliver more than three-quarters of the world's bananas, valued at about $5 billion a year.

22. Nearly 90% of the North American banana market is dominated by Defendants Chiquita, Dole, and Del Monte. Together, Defendants Chiquita and Dole control 50% of the



world trade in bananas, with Defendants Del Monte and Noboa each controlling 15% and 11% of the market, respectively.

23. In 1999, U.S. banana prices peaked. During this time, Costa Rica was the largest country of origin for U.S. banana imports. But by 2004 the volume of banana imports from Costa Rica to the U.S. declined by 46%. During this time, banana imports to the U.S. declined by almost 10% decline.

24. In May 1999, the FAO held a meeting of the Intergovernmental Group on Bananas and on Tropical Fruits in Gold Coast, Australia. The meeting was attended by banana producers throughout the world, including Defendant Chiquita.

25. Following this meeting, banana prices per 40-pound box increased by 88%, from $5.40 to $10.16, between June 1999 and February 2000. This price increase reversed a prior price decline and occurred in the absence of economic conditions that would be consistent with a legitimate, non-conspiratorial, increase.

26. In 2000, world banana prices decreased. During this time, Defendant Noboa was sanctioned by the Ecuadorian government for paying prices to producers that were below the established minimum price. Producers continued to complain in 2001 that Noboa and others disregarded the minimum price.

27. In December 2001, the FAO Intergovernmental Group on Bananas and on Tropical Fruits met in San Jose, Costa Rica. Once again, banana producers throughout the world attended the meeting, including Defendants Dole and Del Monte, as well as the International Banana Association ("IBA").


"Exh B"

28.     Founded in 1982, the IBA is a trade organization consisting of members engaged in the business of importing bananas into the U.S. The IBA members include, among others, Defendants Chiquita, Del Monte, and Dole.

29.     At this meeting, participants raised concerns about the negative banana pricing trends and "it was requested that the Secretariat should study banana market trends over the past few years to examine reasons behind the long-term price decline while the gap between prices received by growers and paid by consumers had continued to widen."

30.     Following this meeting, banana prices per 40-pound box increased 44%, from $7.91 to $11.38 between February and June 2002. This price increase reversed a prior price decline and occurred in the absence of economic conditions that would be consistent with a legitimate, non-conspiratorial, increase.

31.     In March 2004, the FAO met in the Canary Islands in Spain. Once again, banana producers throughout the world attended the meeting, including Defendant Chiquita and the IBA.

32.     Following this meeting, banana prices continued a sharp increase that began in May 2003, rising 17%, from $9.54 per 40-pound box to $11.15 between April and July 2004. This price increase also occurred absent economic conditions that would be consistent with a legitimate, non-conspiratorial, increase.

33.     On May 10, 2005, Chiquita reported first quarter 2005 net income of $87 million, achieving its "best quarterly results in more than a decade." During this period, net sales were $932 million, up 17% from the first quarter 2004. Chiquita attributed the increased net sales to "higher banana pricing and volume in both North America and Europe, favorable European exchange rates and increased sales of other fresh produce." Net sales rose to $520 million in the



39. On June 3, 2005, Dole confirmed that the EC antitrust authorities had searched its offices in Europe, and that the EC was investigating possible anticompetitive conduct in the banana industry.

40. On June 3, 2005, Del Monte announced that the EC antitrust authorities raided the company's Hamburg, Germany office on June 2, 2005 in connection with the banana cartel investigation.

41. On information and belief, the conduct reported by Chiquita to the U.S. authorities affected commerce and purchasers worldwide, within the U.S., including California, Kansas, Nebraska, and Tennessee.

## FRAUDULENT CONCEALMENT

42. Plaintiffs had no knowledge of Defendants' unlawful, self-concealing conspiracy and could not have discovered it at an earlier date through due diligence because of the deceptive practices and techniques of secrecy Defendants employed to avoid detection of, and to fraudulently conceal, their conspiracy.

43. Plaintiffs and the class members did not discover and could not have discovered through reasonable diligence the existence of their claims against Defendant until shortly before filing this case.

44. Because Defendants kept their conspiracy secret, Plaintiffs did not know that banana prices and markets were secretly fixed.

45. Defendants actively concealed these facts by affirmatively leading those who purchased indirectly from them—Plaintiffs and the class members—to believe that Defendants' conduct and the prices charged were competitive.


"Ex E"