## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OWEN F. SILVIOUS )<br><br>Plaintiff, )<br>v. )<br><br>CHIQUITA BRANDS INTERNATIONAL, )<br>INC., et al., )<br><br>Defendants. )<br>) | Civil Case No. 1:10-cv-01139-JDB |

### DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Chiquita Brands International, Inc., Chiquita Fresh North America LLC, Dole Food Company, Inc., Dole Fresh Fruit Company, Fresh Del Monte Produce Inc., and Del Monte Fresh Produce Company (collectively, "Defendants") respectfully move that the Court dismiss the claims against them alleged in the above-captioned matter.[1]

For the reasons set forth in the accompanying Memorandum of Points and Authorities, Plaintiff fails to state a claim because (1) this suit is precluded by res judicata, (2) Plaintiff lacks standing under the District of Columbia Consumer Protection Procedures Act, and (3) this case is time-barred under the applicable statute of limitations. Therefore, the Defendants request that the Court grant this Motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and enter an order dismissing all claims brought against the Defendants by the Plaintiff in the Complaint.

---

[1] Defendants Dole Food Company, Inc., Dole Fresh Fruit Company, Fresh Del Monte Produce Inc., and Del Monte Fresh Produce Company join this Motion subject to, and without waiver of, their individual motions to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Dated:  July 13, 2010                    Respectfully submitted on behalf of the
                                         Defendants,


                                         /s/ D. Bruce Hoffman
                                         D. Bruce Hoffman, D.C. Bar No. 495385
                                         Hillary E. Maki, D.C. Bar No. 978844
                                         HUNTON & WILLIAMS LLP
                                         1900 K Street NW
                                         Washington, DC 20006
                                         T: (202) 955-1500
                                         F: (202) 828-3766
                                         **_Counsel for Defendants Dole Food
                                         Company, Inc. and Dole Fresh Fruit
                                         Company_**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| OWEN F. SILVIOUS | ) |
| | ) |
| Plaintiff, | )  Civil Case No. 1:10-cv-01139-JDB |
| v. | ) |
| | ) |
| CHIQUITA BRANDS INTERNATIONAL, | ) |
| INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Chiquita Brands

International, Inc., Chiquita Fresh North America LLC, Dole Food Company, Inc., Dole

Fresh Fruit Company, Fresh Del Monte Produce Inc., and Del Monte Fresh Produce

Company (collectively, "Defendants"), move this Court to dismiss the Complaint of

Plaintiff Owen F. Silvious ("Plaintiff" or "Silvious").[1]  Plaintiff fails to state a claim

because this suit is precluded by res judicata, Plaintiff lacks standing under the District of

Columbia Consumer Protection Procedures Act, and this case is time-barred.

**I.      INTRODUCTION**

This lawsuit represents the latest of many frivolous suits filed by federal prisoner

Owen F. Silvious.  Since being imprisoned for defrauding an overseas flour mill of

"approximately $1.2 million," *United States v. Silvious*, 512 F.3d 364, 366-68 (7th Cir.

---

[1] By separate motions, Dole Food Company, Inc. and Dole Fresh Fruit Company
(the "Dole Defendants") and Fresh Del Monte Produce Inc. and Del Monte Fresh
Produce Company (the "Del Monte Defendants") are moving to dismiss the claims
against them for lack of personal jurisdiction under Federal Rule of Civil Procedure
12(b)(2).

2008); *see also id.* at 372 (rejecting Silvious' pro se argument as "frivolous"),[2] Silvious

has become a vexatious litigator, with a fondness for antitrust cases.[3]

There is no merit to this suit for at least three reasons. *First*, there has already

been a court-approved settlement on behalf of individual purchasers of bananas that

covers the time period alleged in the Complaint.   Because that settlement involved

questions of fact and law which overlap with those alleged here, this suit is barred by res

judicata.   *Second*, Plaintiff does not allege any injury.   Because he has not suffered any

injury, D.C. law is plain that he lacks standing to bring this suit under the CPPA.   *Third*,

Plaintiff's underlying claim is time-barred because it was not brought within three years

of when Plaintiff knew or should have known of Defendants' alleged wrongdoing.

Plaintiff admits that the Defendants announced the investigations of antitrust authorities

on "June 3, 2005," Compl. ¶¶ 26, 28, and 29—more than five years ago.   Each of these

reasons forecloses Plaintiff's suit.

---

[2] This was not Plaintiff's first run-in with the law.   *E.g.*, *United States v. Silvious*, 946 F.2d 888, 1991 WL 209840 (4th Cir. 1991) (conviction upheld for wire and bank fraud); *see also* Ex. A at 7-17 (public record search listing Owen Franklin Silvious' criminal history, including guilty pleas to "obtain[ing] money by false pretense"); Ex. B, (newspaper article reporting that a Virginian named Owen Silvious, apparently Plaintiff, was arrested after "an early morning, 12-kilometre high-speed chase" for "demand[ing] $25,000 in [an] extortion attempt" by "ma[king] a bomb threat" at a casino, and that he was sentenced to "30 months in prison").

[3] *See In re Plastics Additives Antitrust Litig.*, No. 08-3358, 2009 WL 405522, *1 (3d Cir. Feb. 19, 2009) (dismissing as "frivolous" Silvious' challenge to an antitrust class settlement); *Silvious v. Midland Credit Mgmt., Inc.*, No. 5:07CV145, 2009 WL 2392107 (granting motion to dismiss in case involving debt collection); *Silvious v. Ungar's Food Products, Inc.*, No. 10-cv-639-JDB (D.D.C.) (claim relating to food labels pending before this Court); *Silvious v. Akzo Noble, Inc.*, No. 10-cv-969-JDB (D.D.C.) (claim relating to alleged price fixing of hydrogen peroxide pending before this Court).

## II.      BACKGROUND

On June 3, 2010, Plaintiff filed a complaint in the Superior Court of the District of Columbia, captioned *Owen F. Silvious v. Chiquita Brands International Inc.*, No. 0004242-10 (the "Complaint").  Defendants received a copy of the Summons by mail on June 14 and June 15, 2010.  Defendants then removed to this Court on July 6, 2010.  The Complaint alleges that Defendants violated the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.*, by "violat[ing] the District of Columbia Antitrust Act (Restraints of Trade Act), D.C. Code 28-4501 *et seq.*, D.C. Code 28-4502 and D.C. Code 28-4503 …."  Compl. ¶ 1.  In particular, the Complaint claims that "the named defendants and unnamed coconspirators conspired to monopolize, control, restrain trade and combined to fix the price of bananas sold in the United States, including the District of Columbia during the period" from "October 19, 2000 [through] June 26, 2007."  *Id.* ¶¶ 18, 37.  Although he does not allege any personal injury, Plaintiff seeks upwards of "$5 million" in damages and fees.  *See id.* ¶¶ 36, 39-40.

The facts alleged in the Complaint are essentially identical to those asserted in two suits filed in federal court in Florida in 2005 by purported classes of indirect purchasers of bananas alleging price fixing of bananas in the United States.  *See Solo v. Chiquita Brands Int'l, Inc.*, No. 05-61335-CIV-JORDAN (S.D. Fla.) (alleging price fixing from May 1999 until the suit was filed in August 2005); *Stone v. Chiquita Brands International, Inc.*, No. 05-22935-CIV-JORDAN (S.D. Fla.) (alleging price fixing from July 2001 until the suit was filed in November 2005).  Indeed, Plaintiff re-alleges the same "allegations stated in paragraphs 20 thru 45 of an antitrust action complaint filed in the United States District Court, Southern District of Florida, Docket No. 05-cv-61335)," and Plaintiff even attaches photocopied pages of the *Solo* complaint to his Complaint in

3

this case.   Compl. ¶ 33 & Compl. Ex. A-E.   These earlier actions were consolidated before the Honorable Adalberto Jordan in the United States District Court for the Southern District of Florida under the *Solo* case style.   They were settled and dismissed on a class-wide basis with prejudice on November 21, 2007.   *See* Ex. C (Final Approval of Class Settlement and Final Judgment, No. 05-61335 (S.D. Fla. Nov. 21, 2007)).

Plaintiff actively participated in the proceedings before the Southern District of Florida.   First, although he had opted out of the settlement class, he attempted to object to the settlement.   *See* Ex. D (Motion For Court To Dissapprove [sic] Settlement Agreement, No. 05-61335 (S.D. Fla. Sept. 18, 2007)).   Then, claiming to be a "class member," who had "cancel[ed] his previous opt-out letter," Plaintiff tried to appeal the settlement agreement to the Eleventh Circuit—albeit without paying a filing fee.   Ex. E (Brief), at 1, 3; *see also* Ex. F (Notice of Intent To Appeal); Ex. G (Letter to Clerk). Judge Jordan denied Plaintiff's application to proceed in forma pauperis, finding that Plaintiff's appeal was "not taken in good faith" and was "frivolous," and concluding that Plaintiff had lied in "a declaration under penalty of perjury."   Ex. H (Order Denying Motion), at 2.

## III.   LEGAL STANDARD

The Supreme Court has clearly held that unless a complaint is "'plausible on its face,'" a court must grant a motion to dismiss "for failure to state a claim."   *Chambers v. U.S. Dep't of Interior*, 568 F.3d 99, (D.C. Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).   This Court thus cannot accept inferences "unsupported by the

facts set out in the complaint [or] legal conclusions cast in the form of factual allegations."[4] *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

## IV.   ARGUMENT

### A.   Plaintiff's Suit is Barred by Res Judicata.

This case must be dismissed because it is barred by res judicata.  As explained *supra* in Section II, the underlying facts alleged in the Complaint are essentially identical to those asserted in two cases that were filed in the Southern District of Florida in 2005 by purported classes of indirect purchasers of bananas, and subsequently consolidated, settled on a class-wide basis, and dismissed with prejudice on November 21, 2007.

Because of res judicata, class members cannot file another suit after the class has settled.  Indeed, "[t]he fundamental effect of a properly certified class action is . . . [that] the adjudication of common questions, whether favorable or not, will be binding on class members."  ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS (4th ed.) § 1.7 at 28; *see also id.* ("The binding nature of class actions on absent members of the class is found in long-standing Anglo-American precedents, has been codified in Rule 23, and is recognized in the Restatement (Second) of Judgments 41(1)(e).").  Were it otherwise, the class action system would collapse.

Paragraph 5 of the Final Approval of Settlement and Final Judgment in the *Solo* case described the settlement class as follows:

> All persons and entities that purchased Bananas within the Indirect Purchaser States, indirectly from any defendant or alleged co-conspirator during the period from May 1, 1999 to the Effective Date of this Settlement Agreement.  Excluded from the Class are the defendants, their

---

[4] Unless noted, all internal citations and quotations are omitted, and all emphasis is added.

respective parents, employees, subsidiaries and affiliates, their alleged co-conspirators, and all government entities.

Ex. C (Final Approval of Settlement) ¶ 5.   The Settlement Agreement included the District of Columbia in the list of Indirect Purchaser States.   *See* Ex. I (Ps' Unopposed Mot. for Final Approval of Settlement) at 2, n.1.

Paragraph 12 of the *Solo* Final Approval of Settlement and Final Judgment states the following concerning future claims:

> Each member of the Settlement Class shall not after the Effective Date of the Settlement Agreement, seek to institute, maintain, prosecute or continue to maintain or prosecute any suit or action, or collect from or proceed against the [Defendants], based on the Released Claims.

Ex. C (Final Approval of Settlement) ¶ 12.

Thus, the *Solo* settlement bars any suits purporting to be on behalf of individuals who did not opt out from the settlement.[5]   Regardless of whether Plaintiff properly opted out from the *Solo* settlement, he cannot bring an action on behalf of those who did *not* opt out and who therefore were included in the class of indirect purchasers and whose claims are barred.   As Judge Jordan specifically told Plaintiff nearly three years ago, he cannot opt out on behalf of anyone else.   Instead, "[h]e may only opt out on his own behalf." Ex. J (Order Filing Silvious Opt-Out).   *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024-25 (9th Cir. 1998) (one cannot opt out for others).

---

[5] In the *Solo* case, Plaintiff initially opted out of the class, but then he swore under penalty of perjury that he had rejoined the class.   On March 25, 2008, Judge Jordan found that "[d]espite Mr. Silvious' declaration under penalty of perjury, . . . Mr. Silvious never mailed the September 11 letter withdrawing his prior opt out."   See Ex. H (Order Denying Motion to Proceed IFP).   Plaintiff hides the fact from this Court that he has filed pleadings in what is essentially the same case, and that a federal judge has already concluded that Plaintiff committed perjury in those pleadings.   That is sanctionable behavior, and Defendants reserve the right to seek sanctions.

Defying Judge Jordan's admonition, Plaintiff brings this suit on behalf of the "general public." Compl. ¶ 5. The D.C. Superior Court has held that such a suit under the CPPA for money damages must be brought as a class action under Rule 23. *See Margolis v. U-Haul Int'l, Inc.*, Case No. 2007 CA 005245 B, 2009 D.C. Super. LEXIS 8, at \*4, 25-26 (D.C. Super. Ct. Dec. 17, 2009).[6] But here, there has already been a class action, and that class action is long-closed under the authority of the Southern District of Florida. Thus, the case must be dismissed because the Complaint runs headlong into res judicata.

## B.   Plaintiff Lacks Standing to Bring This Suit.

Plaintiff's suit must also be dismissed because he has no standing to bring it. Tellingly, Plaintiff does not even *allege* any injury: he fails to allege he purchased a single banana anywhere, much less in the District of Columbia. Nor is it even possible that Plaintiff was injured in D.C. through "June 26, 2007." Compl. ¶ 37. Plaintiff has been in federal prison in Butner, North Carolina for "five counts of mail fraud" since at least "August 16, 2005." Compl. at 1; *Silvious*, 512 F.3d at 367-68. Because he cannot show injury, Plaintiff's suit must be dismissed for failure to state a claim under the CPPA.

### 1.   D.C. Law Requires That A Plaintiff Have Standing.

To bring a suit in the District of Columbia, a plaintiff must demonstrate standing. D.C. courts are not constrained by Article III's "case or controversy" requirement. But as a matter of D.C. statutory law a plaintiff still must show in "***every case***" some "injury that is attributable to the defendant" before relief can be granted. *Friends of Tilden Park, Inc.*

---

[6] The *Margolis* opinion is also available at 2009 WL 5788369, but without pagination.

*v. District of Columbia*, 806 A.2d 1201, 1206-07 (D.C. 2002).  Because Plaintiff does not allege any injury—and, indeed, denies that an injury requirement even exists, *see* Compl. ¶ 36—this Court must dismiss Plaintiff's suit.

Nowhere in his Complaint does Plaintiff allege any injury.  In fact, although he says that he "visited the District of Columbia more than fifty times during the period October 19, 2000 through January 31, 2005," Compl. ¶ 5, Plaintiff never claims to have purchased *any* bananas from *any* Defendant during *any* of those visits.  That silence speaks volumes.  Plaintiff seeks a windfall of millions of dollars for alleged violations of the CPPA, even though he did not lose a single penny.  *Id.* ¶¶ 36, 39.  In fact, it is impossible that Plaintiff was injured in D.C. from "October 19, 2000 [through] *June 26, 2007*," the period for which damages are sought.  *Id.* ¶ 37.  He has been in prison since at least "*August 16, 2005*," *Silvious*, 512 F.3d at 367-68.  And, as explained below, any conduct that occurred before *June 2006* is barred by the statute of limitations.  In other words, Plaintiff seeks damages for injuries that he did not suffer and for time periods in which it was impossible for him to have been in the District of Columbia.

But Plaintiff's argument is more fanciful still.  Not only does he not allege any personal injury, Plaintiff argues that *no one* needs to be injured.  According to him, even if not one person was "actually misled, deceived or damaged by dfendant's [sic] violation of a 'trade practice law' of the District of Columbia," this suit for "$5 million" could still be brought.  Compl. ¶¶ 36, 39.  To top it off, Plaintiff claims that he, an out-of-state prisoner who has committed perjury in a related matter and who concedes he has not been in the District for over five years, *id.* ¶ 5, can bring a suit on behalf of D.C.'s "general public."

This is not the law of the District of Columbia, or, as far as we know, anywhere else in the United States.  While the CCPA provides that "[a] person, whether acting for the interests of itself, its members, or the general public, may bring an action . . . seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia,"   D.C. Code § 28-3905(k)(1), D.C. law is plain that that "*in every case*," *Friends of Tilden Park*, 806 A.2d at 1207, a plaintiff must show "injury in fact" before relief can be granted, *Lee v. District of Columbia Bd. of Appeals & Review*, 423 A.2d 210, 216 n.13 (D.C. 1980).  Indeed, the D.C. courts have made this commonsensical point time and again.  *E.g.*, *York Apartments Tenants Ass'n v. District of Columbia Zoning Comm'n*, 856 A.2d 1079, 1085 (D.C. 2004) (requiring a showing of "actual injury"); *Fisher v. Gov't Employees Ins. Co.*, 762 A.2d 35, 38 (D.C. 2000) (D.C. courts can only "decid[e] 'cases and controversies'").  This Court must follow D.C. law, *e.g.*, *Anchorage-Hynning & Co. v. Moringiello*, 697 F.2d 356, 360-61 (D.C. Cir. 1983) (per curiam), and D.C. law is clear that without suffering injury, a plaintiff is not entitled to relief.

**2.      Precedent Is Plain That The CPPA Requires Actual Injury.**

Consistent with the above-cited law, both this Court and the D.C. courts have *already* held that before relief can be granted under the CPPA, a plaintiff must show injury.  *See Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 28-29 (D.D.C. 2007) (under D.C. law, "plaintiff must present an actual or threatened injury-in-fact to have standing to raise his [CPPA] claims …."); *Hakki v. Zima Co.*, No. 03-9183, 2006 WL 852126, at *2 & n.1 (D.C. Super. Ct. Mar. 28, 2006) ("There is no indication that the [D.C.] Council intended to legislate away the time-honored principles of standing as they apply to claims of individuals, whether alone or as representatives of a proposed class."), *aff'd*, 926 A.2d

9

722 (D.C. 2007); *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 177 (D.D.C. 2003) ("Standing requires individualized proof of both the fact and the extent of the injury.  The amendment to the CPPA in 2000 did not change the requirements for standing under D.C. law, despite its broad language.").  This precedent controls.

Moreover, the underlying basis of Plaintiff's claim—the Antitrust Act, *see* Compl. ¶ 1—expressly requires actual injury, *see* D.C. Code § 28-4508 ("Any person **who is injured** in that person's business or property by reason of anything forbidden by this chapter may bring a civil action for damages ….").  Plaintiff attempts to evade that injury requirement by styling his antitrust claim as a CPPA suit.  But that is not the way that D.C. law works.  The CPPA does not apply when an underlying statute is not listed in "the thirty-some detailed examples of unfair trade practices set forth in D.C. Code § 28-3904" and when that underlying statute "creates the right at issue" and has "its own detailed provisions for implementation and enforcement."  *Gomez v. Independence Mgmt. of Del., Inc.*, 967 A.2d 1276, 1285 (D.C. 2009).

Here, as in *Gomez* (which concerned landlord-tenant law), the Antitrust Act is not listed in D.C. Code § 28-3904, and the Antitrust Act is a comprehensive statutory regime which both creates the right at issue and which has its own detailed enforcement scheme. *See* D.C. Code § 28-4501, *et seq*.  Thus, even assuming that the CPPA does not have an injury requirement, *but see Hoyte*, 489 F. Supp. 2d at 28-29 (holding that under the CPPA, "plaintiff must present an actual or threatened injury-in-fact to have standing"), this Court still must dismiss Plaintiff's suit because the CPPA cannot be used to evade the Antitrust Act's injury requirement.  *See Gomez*, 967 A.2d at 1285 ("'Resisting the

force of the better-fitted statute requires a good countervailing reason, and none appears here.'") (quoting *EC Term of Years Trust v. United States*, 550 U.S. 429, 434 (2007)).

### 3.  If the CPPA Did Not Require Actual Injury, It Would Be Unlawful Under Federal Law and the Due Process Clause.

Importantly, precedent also holds that if the CPPA did not require a showing of actual injury under ***D.C. law***, then the statute would be invalid under ***federal law***.  The jurisdiction of the D.C. local courts is established by Congress, not the D.C. Council.  *See Palmore v. United States*, 411 U.S. 389, 397 (1973); *District of Columbia v. Owens-Corning Fiberglas Corp.*, 572 A.2d 394, 405 (D.C. 1989); *see also* U.S. CONST. ART. I, § 8, cl. 17.  In the Court Reorganization Act of 1970, Congress mandated that only "*[c]ases and controversies shall be heard and determined by divisions of the court*. . . ." D.C. Code § 11-705(b).  Thus, D.C. courts can only grant relief if there is a "case or controversy."  *E.g.*, *Lee*, 423 A.2d at 216 n.13 ("Congress provided that we, like the federal courts, should hear ***only*** '(c)ases and controversies.'") (quoting D.C. Code § 11-705(b)); *Fisher*, 762 A.2d at 38 n.7 (a D.C. Court is "limited by [its] governing statute to deciding 'cases and controversies.'") (quoting D.C. Code § 11-705(b)); *Williams*, 297 F. Supp. 2d at 177 ("D.C. Code § 11-705(b) . . . limit[s the] jurisdiction in D.C. Court of Appeals to '[c]ases and controversies,'" and so ***requires actual "injury"***).  But under Plaintiff's reading of the CPPA, the D.C. Council did exactly what Congress forbids it from doing—eliminate the "case or controversy" requirement.  That is no way to read a statute.  *See Umana v. Swidler & Berlin, Chartered*, 669 A.2d 717, 723-24 (D.C. 1995) ("Statutes should generally be construed to avoid any doubt as to their validity.").

Equally important, if Plaintiff's "anyone can represent anyone" reading of the CPPA were correct, then the CPPA would violate the Fifth Amendment's Due Process

Clause.  Plaintiff seeks money damages on behalf of the "general public," which he defines as everyone who lived in D.C., worked in D.C., or even visited D.C. "between . . . October 19, 2000 and June 26, 2007."  Compl. ¶ 6.  But the "general public" is not provided with what Due Process requires: notice of the claim, an opportunity to be heard and to opt-out, and, importantly, the guarantee that Plaintiff—who was not injured at all—is an adequate representative of their interests.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("[Absent] plaintiff must receive notice plus an opportunity to be heard and participate in the litigation."); *id.* ("[D]ue process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the [action] . . . ."); *id.* ("[T]he Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members.").  Nor can Plaintiff escape Due Process by claiming that the "general public" would not be bound by the judgment.  Then, the CPPA would violate the Due Process rights of *Defendants*, who would be exposed to "duplicative liability."  *Korea Supply Co. v. Lockheed Martin Co.*, 29 Cal. 4th 1134, 1151 (Cal. 2003).  Needless to say, the D.C. Council did not intend the CPPA to violate anyone's constitutional rights.  *Cf. Hakki*, 2006 WL 852126, at *2 & n.1.

### 4.  *Grayson v. AT & T Corp.* Changes Nothing.

Against all of this authority, Plaintiff cites only one case that is even remotely on point: *Grayson v. AT&T Corp.*, 980 A.2d 1137 (D.C. 2009).  But Plaintiff, true to form, is trying to deceive the Court.  Plaintiff fails to mention that *the Grayson decision has been vacated and so is no longer valid*.  *See* 989 A.2d 709 (D.C. 2010).  After the *Grayson* panel decided the case, the *en banc* court decided to hear the matter itself, and vacated the panel decision; no opinion has yet issued.  *Id.  Grayson* thus does not support Plaintiff's claim in the least.

The other case that Plaintiff cites, *Breakman v. AOL*, 545 F. Supp. 2d 96 (D.D.C. 2008), is even further afield.  That case does not discuss whether the CPPA has an injury requirement, nor does it even mention "injury," "standing," or "case or controversy." Therefore, *Breakman*, which in any event has been superseded by a subsequent case, *see Margolis*, 2009 D.C. Super. LEXIS 8, is a dead-end.  It is simply irrelevant to this case.

This case can be summed up succinctly: no authority supports Plaintiff's position that he can sue Defendants for millions of dollars without showing any injury, while ample authority holds otherwise.  *E.g.*, *Hoyte*, 489 F. Supp. 2d at 28-29; *Williams*, 297 F. Supp. 2d at 177; *Hakki*, 2006 WL 852126, at *2 & n.1.  Because Plaintiff does not allege that he was harmed in any way, his suit must be dismissed under D.C. law.

### C.      The Complaint Must Be Dismissed As Time-Barred.

This suit must also be dismissed because it is barred by the statute of limitations. Where it is apparent from the face of the complaint or from other documents that may be judicially noticed that a claim is time-barred, that claim must be dismissed.  *E.g.*, *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F. Supp. 2d 287, 292 (D.D.C. 2005) ("A defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on the face of the complaint"); *Aguirre v. SEC*, 671 F. Supp. 2d 113, 117 (D.D.C. 2009) (under Rule 12(b)(6), courts are not limited to just the facts alleged in the complaint, but may consider "any documents either attached to or incorporated in the complaint [and] . . . matters of which [courts] may take judicial notice," including "public records").  Here, because Plaintiff has waited more than five years to file his Complaint, his claim is a nonstarter.

1.    **Plaintiff's Claim Is Subject to a Three-Year Statute of Limitations.**

Plaintiff brings this claim under the CPPA.  D.C.'s residual, three-year statute of limitations applies to such claims.  *See* D.C. Code § 12-301(8); *Johnson v. Long Beach Mortgage Loan Trust 2001-4*, 451 F. Supp. 2d 16, 48 (D.D.C. 2006) (applying three-year statute of limitations to claims under the CPPA); *Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 729 (D.C. 2003) (same); *Smith v. Brown & Williamson Tobacco Corp.*, 108 F. Supp. 2d 12, 14 (D.D.C. 2000) (same).  As a result, Plaintiff's claim is subject to a three-year limitations period.

2.    **Plaintiff's Claim Accrued and the Limitations Period Commenced More Than Five Years Ago.**

Under D.C. law, "a claim accrues for purposes of the statute of limitations at the time the injury actually occurs."  *Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 298 (D.C. 2001).  Here, Plaintiff alleges no relevant conduct at all—much less unlawful conduct—after June 3, 2005, the date when Defendants publicly confirmed that antitrust authorities had searched their offices.  *See id.* ¶¶ 26-29.  While the *Solo* case was settled in 2007, there is no concession in the settlement agreement that any unlawful conduct occurred after June 3, 2005.

In some cases, if the alleged wrongdoing is "obscure," the so-called "discovery rule" may apply to delay the accrual of the cause of action.   *See Johnson*, 451 F. Supp. 2d. at 41.  The discovery rule provides that "the statute of limitations will not run until plaintiffs know or reasonably should have known that they suffered injury due to the defendants' wrongdoing."  *Id.* (quoting *Colbert v. Georgetown Univ.*, 641 A.2d 469, 473 (D.C. 1994)).  Under D.C. law, the question of whether the plaintiff knew or should have known about a potential claim is assessed using an "objective 'reasonable person'

14

standard." *Hendel v. World Plan Executive Council*, 705 A.2d 656, 661 n.5 (D.C. 1997);

*see also Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 109 (D.D.C. 2002).  Moreover,

> The discovery rule does not . . . give the plaintiff carte blanche to defer legal action indefinitely if she knows or should know that she may have suffered injury and that the defendant may have caused her harm.  Indeed, a right of action may accrue before the plaintiff becomes aware of all of the relevant facts.  "It is not necessary that all or even the greater part of the damages . . . occur before the [right] of action arises."

*Hendel*, 705 A.2d at 661 (quoting *Knight v. Furlow*, 553 A.2d 1232, 1235 (D.C. 1989).

There can be no question that by July 20, 2005, at the absolute latest, plaintiff was

on notice that he may have suffered injury by reason of the acts alleged in the Complaint.

On that date, the first of eight suits was filed against the Defendants for the exact same

acts of price fixing as alleged here.  Seven copycat lawsuits ensued, the latest filed on

November 10, 2005.  This chart shows when the lawsuits were filed:

**Banana Price-Fixing Cases Brought in 2005**

| Date Filed | Caption | Description |
|---|---|---|
| 7/20/05 | *Brookshire Brothers LTD., et al. v. Del Monte Fresh Produce Company, et. al.*, Case No. 05-CIV-21962-JORDAN/TORRES (S.D. Fla.) | Direct purchaser action; became lead case in consolidated class action; the matter was settled and dismissed before the Hon. Adalberto Jordan on November 26, 2007 |
| 7/21/05 | *Brigiotta's Farmland Produce & Garden Center, Inc. v. Del Monte Fresh Produce Company, et. al*, Case No. 05-CIV-21984-COOKE/BROWN (S.D. Fla.) | Direct purchaser action; action was consolidated into *Brookshire Brothers LTD, et. al v. Del Monte Fresh Produce Company, et. al.* |
| 7/27/05 | *Syracuse Banana Co., Inc. v. Del Monte Fresh Produce Company, et. al*, Case No. 05-CIV-22068-COOKE/BROWN (S.D. Fla.) | Direct purchaser action; action was consolidated into *Brookshire Brothers LTD, et. al v. Del Monte Fresh Produce Company, et. al.* |
| 7/29/05 | *Harvin Foods, Inc. v. Del Monte Fresh Produce Company, et. al*, Case No. 05-CIV-22096-COOKE/BROWN (S.D. Fla.) | Direct purchaser action; action was consolidated into *Brookshire Brothers LTD, et. al v. Del Monte Fresh Produce Company, et. al.* |

| Date Filed | Caption | Description |
|---|---|---|
| 8/8/05 | *Solo, et al. v. Chiquita Brands Int'l, Inc., et al.*, No. 05-61335-CIV-JORDAN (S.D. Fla.) | Indirect purchaser class action; the matter was settled and dismissed before the Hon. Adalberto Jordan on November 21, 2007 |
| 8/10/05 | *VIP Sales Co., Inc. v. Del Monte Fresh Produce Company, et. al*, Case No. 05-CIV-22215-COOKE/BROWN (S.D. Fla.) | Direct purchaser action; action was consolidated into *Brookshire Brothers LTD, et. al v. Del Monte Fresh Produce Company, et. al.* |
| 08/19/05 | *Christopher Farms v. Chiquita Brands International, Inc., et. al*, Case No. 05-CIV-61405-COOKE/BROWN (S.D. Fla.) | Direct purchaser action; action was consolidated into *Brookshire Brothers LTD, et. al. v. Del Monte Fresh Produce Company, et. al.* |
| 11/10/05 | *Stone, et al. v. Chiquita Brands International, Inc., et al.*, No. 05-22935-CIV-JORDAN (S.D. Fla.) | Indirect purchaser action under California state law; the matter was consolidated into *Solo, et al. v. Chiquita Brands International, Inc., et al.* |

Now, nearly five years *after* the first suit was filed and over four years since the last suit was filed, Plaintiff has filed his own copycat suit. But he is too late. If eight other parties became "aware of all the relevant facts" and were able to bring suit five years ago, there can be no dispute that Plaintiff was (or should have been) on notice of his claim far more than three years ago.

Indeed, there is reason why other parties brought suit in 2005. On June 3, 2005, Defendants publicly stated that they had been searched by antitrust authorities. Those statements prompted a great deal of press attention. Likewise, during the *Solo* case, other statements were made that should have put Plaintiff on notice. In addition to the filing of the earlier lawsuits, the limitations period began to run more than three years before this case was filed because Plaintiff was on inquiry notice by reason of these events:

- ***June 3-6, 2005***: Publication of articles in major newspapers including the *New York Times*, *Atlanta Journal and Constitution*, *International Herald Tribune*, *Cincinnati Post*, and *Wall Street Journal* documenting Chiquita's statement that it revealed to the European Commission that Chiquita employees "had shared pricing and volume information over many years with

competitors in Europe, and may have engaged in other conduct, in violation of European competition laws and company policies" and certain employees in an unnamed Central American country had "shared information with competitors regarding the volume of fruit shipped from the country to North America." In addition, these articles reported that the European Commission antitrust authorities raided Del Monte and Dole's offices in Europe and that the Commission was investigating possible anticompetitive conduct in the banana industry.[7]

- **September 1, 2005**:  Publication of article in *Miami Herald* documenting the various class actions filed against Chiquita, Dole, and Del Monte alleging that the corporations conspired to increase the price of bananas in the United States.[8]

- **May 24, 2006**:  Public filing of Chiquita's Answer to the Direct Purchasers' Amended Consolidated Class Action Complaint in which Chiquita admits that it revealed to the European Commission that certain Chiquita employees "had shared pricing and volume information over many years with competitors in Europe, and may have engaged in other conduct, in violation of European competition laws and company policies" and certain employees in an unnamed Central American country had "shared information with competitors regarding the volume of fruit shipped from the country to North America." In addition, Chiquita admitted that it had cooperated with European Union authorities in its investigation into possible anti-competitive behavior by banana producers, and that it also had notified the appropriate regulatory authorities in the United States and Canada.[9]

---

[7] *See, e.g.,* Paul Meller, *Investigators Raid Fruit Companies in Europe*, NEW YORK TIMES, June 4, 2005, at C12; Alexander Coolidge, *Chiquita Offices Raided/Firm Cooperating With Investigation*, CINCINNATI POST, June 4, 2005, at A1; Paul Heller, *EU raids some suppliers of bananas and pineapples*, INTERNATIONAL HERALD TRIBUNE, June 6, 2005, at 11; *see also Chiquita Brands International Issues Statement Regarding European Commission Investigation*, AP ALERT – BUSINESS, June 3, 2005, *available at* 6/3/05 APALERTBUS 11:45:15 (Westlaw) (collected as Exhibit K).

[8] Jane Bussey, *Banana battle heads to court: Produce buyers and consumers have filed a bunch of class-action lawsuits in Miami, alleging banana price-fixing by big multinationals such as Chiquita, Dole and Fresh Del Monte*, MIAMI HERALD, Sept. 1, 2005, at C1 (included as Exhibit L).

[9] Answer of Defendant Chiquita Brands International, Inc. and Chiquita Fresh North America LLC to Class Action Complaint, *Brookshire Brothers LTD. v. Chiquita Brands Int'l, Inc.*, Case No. 05-CIV-21962-JORDAN/TORRES (S.D. Fla. May 24, 2006) (included as Exhibit M).

Taken individually, *any* of these events put the Plaintiff on notice of his potential claims. *E.g.*, *Mullin*, 785 A.2d at 299-300 (holding that distribution of publicly available weekly periodical triggered the running of the statute of limitations on defamation claim); *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996) ("'[A]ctual notice' is that notice which a plaintiff actually possesses; 'inquiry notice' is ***that notice which a plaintiff would have possessed after due investigation***."); *Jacobsen*, 201 F. Supp. 2d at 109-12 (explaining that plaintiffs were capable of discovering their own cause of action "***through reasonable investigation***" and stating that a similar claim to their own was a "matter of public record" and they were obligated to "***exercise reasonable diligence to learn of its contents***").  This widespread press coverage triggered a duty by Plaintiff to investigate.

Viewed collectively, there is no doubt that Plaintiff had sufficient information to bring a complaint well before June 2007 (*i.e.*, three years before he filed this Complaint).  If a statute of limitations is to have any meaning at all, a defendant's public statement and subsequent widespread press coverage, in addition to the filing of actions by other claimants, must put any would-be plaintiff on notice.  Because Plaintiff waited nearly five years *after* the disclosures to file suit, Plaintiff's claims should be dismissed as time-barred.

## CONCLUSION

For the reasons stated above, the Court should grant the Defendants' Motion, and dismiss with prejudice the Plaintiff's claims, in their entirety.

Dated:  July 13, 2010                          Respectfully  submitted  on  behalf  of  the
                                               Defendants,


                                               /s/ D. Bruce Hoffman
                                               D. Bruce Hoffman, D.C. Bar No. 495385
                                               Hillary E. Maki, D.C. Bar No. 978844
                                               HUNTON & WILLIAMS LLP
                                               1900 K Street NW
                                               Washington, DC 20006
                                               T: (202) 955-1500
                                               F: (202) 828-3766
                                               *Counsel for Defendants Dole Food
                                               Company, Inc. and Dole Fresh Fruit
                                               Company*

Tefft W. Smith, D.C. Bar No. 458441
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
T: (202) 879-5212
F: (202) 879-5200
*Counsel for Defendants Chiquita Brands International, Inc.
and Chiquita Fresh North America LLC*

Carlos M. Sires (not yet admitted *pro hac vice*)
David Nelson, D.C. Bar No. 402063
BOIES SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard
Suite 1200
Fort Lauderdale, FL 33301
T: (954) 356-0011
F: (954) 356-0022
*Counsel for Defendants Fresh Del Monte Produce Inc.
and Del Monte Fresh Produce Company*

19

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| OWEN F. SILVIOUS | ) |
| | ) |
| | ) Civil Case No. 1:10-cv-01139-JDB |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| CHIQUITA BRANDS INTERNATIONAL, | ) |
| INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2010, the foregoing **Motion to Dismiss and Memorandum of Points and Authorities in Support of the Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)** was filed electronically with the United States District Court for the District of Columbia using the Court's ECF system.  I also certify that a copy of the foregoing, including all exhibits, was served via overnight mail on:

> Owen F. Silvious, 16497077
> FCI Butner Medium II
> Old NC Hwy 75
> Butner, NC  27509

/s/ Hillary E. Maki
D. Bruce Hoffman, D.C. Bar No. 495385
Hillary E. Maki, D.C. Bar No. 978844
HUNTON & WILLIAMS LLP
1900 K Street NW
Washington, DC 20006
T: (202) 955-1500
F: (202) 828-3766
***Counsel for Defendants Dole Food Company,***
***Inc. and Dole Fresh Fruit Company***